UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-CR-80152-MIDDLEBROOKS

UNITED STATES OF AMERICA,

        Plaintiff,

v.

WILLIAM H. MINOR, JR.,

        Defendant.
_____/

**MOTION FOR COMPASSIONATE RELEASE
PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)**

William H. Minor, Jr., respectfully moves this Court to reduce his sentence to time served and allow him to serve the remainder of his prison term on home confinement pursuant to the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A). Mr. Minor fits in precisely in the category of offenders who should be considered for transfer to home confinement as he is over 65 years of age with severe pre-existing medical conditions and is serving a sentence for a non-violent crime with no priors.

This Court should reduce Mr. Minor's sentence to time served under the compassionate release statute in 18 U.S.C. § 3582(c)(1)(A) because of the "extraordinary and compelling circumstances of (1) the pandemic of COVID-19 confronting the federal prison system; and (2) Mr. Minor's advanced age and poor health, specifically diabetes, cardiovascular disease, aortic aneurysm without rupture, atrial fibrillation, cerebrovascular disease, hypertension, hyperlipidemia,

and sleep apnea, that also put him at extreme risk of serious illness or death from COVID-19. Furthermore, respect for the law and general deterrence, other notable Section 3553(a) factors, would not be undermined by converting the remainder of his sentence to home confinement given the cataclysmic events of the current pandemic and Mr. Minor's lack of criminal history. We respectfully ask the Court to consider this motion on an expedited basis as each day in custody brings renewed risk to Mr. Minor's life.

## BACKGROUND

After agreeing to be charged by information, Mr. Minor made his first appearance in this case on August 9, 2018. (DEs 1-3). This was Mr. Minor's first arrest. (DE 19, ¶¶ 41-46). Mr. Minor was charged with the non-violent offense of mail fraud in violation of 18 U.S.C. § 1341. (DE 1). After his first appearance, Mr. Minor was released on bond. (DE 3). On September 20, 2018, Mr. Minor pled guilty. (DE 11). On November 29, 2018, and in accord with the parties' sentencing recommendation, this Court sentenced Mr. Minor to 41 months in prison, followed by 3 years of supervised release. (DE 23).  Mr. Minor was allowed to self-surrender to Butner Low Correctional Institution ("Butner Low"). According to the Bureau of Prison's ("BOP") website, Mr. Minor's projected release date is January 22, 2022. He has approximately 22 months to serve of his sentence.

Mr. Minor is 71 years old. (*See* DE 19: p.3). He has an extensive medical history that includes suffering from multiple strokes, diabetes, high blood pressure, prostate cancer, an irregular heart condition, and sleep apnea. (DE 19: ¶¶ 55-56). Mr. Minor's

underlying health conditions are not of the sort that would significantly improve while being incarcerated. His medical records from the BOP reveal that he still suffers from type 2 diabetes mellitus, cardiovascular disease, aortic aneurysm, atrial fibrillation, cerebrovascular disease, hypertension, heart disease, hyperlipidemia, and sleep apnea. (Minor's BOP Records: 1-3)[1]. Mr. Minor was recently hospitalized at a non-BOP facility to receive further medical treatment. (Minor's BOP Records: 38-55). During this four day admission, Mr. Minor was observed possibly having a seizure. (Minor's BOP Records: 41). Due to his medical difficulties, Mr. Minor is restricted to a bed or wheelchair for well over 50% of his waking hours. His condition has adversely affected his ability to engage in self-care activities, including making it difficult to shower or shave, and he must rely on the assistance of other inmates due to his physical mobility issues.

As a result of Mr. Minor's compromised health, and pursuant to 18 U.S.C. § 3582(c)(1)(A), on April 3, 2020, the undersigned electronically mailed ("e-mailed") a request to Butner Low seeking compassionate release for Mr. Minor. On April 7, 2020, the facility acknowledged receipt of this request. The undersigned has been advised by Assistant United States Attorney Adrienne Rabinowitz that the Warden of Butner Low has denied, or intends on denying, Mr. Minor's request for compassionate release. Based on this, and the further arguments below, this Court should not require Mr. Minor to further exhaust his administrative remedies, and should grant

---

[1] Mr. Minor's BOP Records will be separately filed under seal.

Mr. Minor a sentence reduction to convert the remainder of his prison sentence to house arrest.

## ARGUMENT

Given Mr. Minor's age and poor health and the global pandemic of COVID-19, for which Mr. Minor is particularly at risk of death or severe illness, this Court should reduce Mr. Minor's sentence to time served, and allow him to serve the remainder of his prison term on house arrest.

**I. This Court should reduce Mr. Minor's sentence given the extraordinary and compelling circumstances of COVID-19 and Mr. Minor's poor state of health.**

This Court has the authority to reduce Mr. Minor's sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), which states in relevant part that the Court "may reduce the term of imprisonment, after considering the factors set for in [18 U.S.C. §] 3553(a) to the extent they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]" Both of those factors are met here.

This Court should grant Mr. Minor's motion because of the "extraordinary and compelling" circumstances of COVID-19. Mr. Minor is 71 years old and serving a sentence for a non-violent offense. (*See* DE 19, p.3). He has no previous arrests. (DE 19, ¶¶ 41-46). He suffers from significant health issues, including diabetes and serious heart conditions. (DE 19, ¶¶ 55-56). Now, because of the unthinkable spread of a global pandemic that is killing the elderly and people who have pre-existing

medical conditions like Mr. Minor at alarming rates, he faces a serious risk of dying in prison if infected. *See* Center for Disease Control and Prevention ("CDC"), Coronavirus Disease: People who are at higher risk for sever illness, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited April 9, 2020). The CDC has reported that 8 out of 10 deaths reported in the United States from COVID-19 have been in adults 65 years old and older. CDC, Coronavirus Disease 2019: Older Adults, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited April 9, 2020). Given Mr. Minor's age and his specific medical conditions, Mr. Minor faces grave risks if exposed to the COVID-19 virus. BOP has reported 14 confirmed cases among inmates at Butner Low CI. BOP, COVID-19 Coronavirus, available at https://www.bop.gov/coronavirus/. This unparalleled health crisis in our country and its deadly expected arrival in our prisons present "extraordinary and compelling reasons" to grant Mr. Minor's motion.

**A.   This Court has the authority to reduce Mr. Minor's sentence under 18 U.S.C. § 3582(c)(1)(A)(i) for the extraordinary and compelling reasons created by the COVID-19 pandemic.**

With the changes made to the compassionate release statute by the First Step Act, courts need not await a motion from the Director of BOP to resentence prisoners under 18 U.S.C. § 3582(c)(1)(A)(i) for "extraordinary and compelling reasons." Prior to the First Step Act of 2018, the Bureau of Prisons (BOP) acted as the sole gatekeeper in bringing—or, more often, declining to bring[2]—compassionate release requests on

---

[2] *See, e.g., The Answer is No: Too Little Compassionate Release in US Federal Prisons*, Human Rights Watch & FAMM, 2 (Nov. 2012), available at https://www.hrw.org/sites/

5

behalf of inmates. The change to compassionate release made by the First Step Act reflects Congress's goal of diminishing the BOP's control over compassionate release by empowering inmates to bring these motions directly to the district court—and by empowering courts to grant these motions when warranted.

The compassionate release statute was first enacted as part of the Comprehensive Crime Control Act of 1984. It provided that a district court could not modify a final term of imprisonment except in four situations, one of which was the existence of "extraordinary and compelling reasons" warranting the reduction, as determined by the sentencing court. But, although the courts had the final decision-making authority over whether a sentence would be reduced, that authority could be invoked only upon a motion by the Director of the BOP. Without such a motion, sentencing courts were powerless to reduce a prisoner's sentence, even if the court concluded that extraordinary and compelling reasons warranted the reduction. 18 U.S.C. § 3582(c)(1)(A)(i); *see also* PL 98–473 (HJRes 648), PL 98–473, 98 Stat 1837 (Oct. 12, 1984).

Frustrated by the BOP's extreme reluctance to invoke its compassionate release authority, Congress amended the statute as part of the First Step Act of 2018. *See* P.L. 115-391, 132 Stat. 5194, at § 603 (Dec. 21, 2018). These amendments authorize the Court to impose a reduced sentence in Mr. Minor's case.

---

default/files/reports/us1112ForUploadSm.pdf (noting that the average number of compassionate release motions brought by BOP between 1992 and 2012 was less than two dozen per year).

Section 603 of the First Step Act changed the process by which § 3582(c)(1)(A) compassionate release occurs: instead of depending upon the BOP Director to determine an extraordinary circumstance and move for release, a court can now resentence "upon motion of the defendant," after the inmate exhausted administrative remedies with the BOP, or after 30 days from the receipt of the inmate's request for compassionate release with the warden of the defendant's facility, whichever comes earlier. 18 U.S.C. § 3582(c)(1)(A). Thus, under the First Step Act, a court may now consider the defendant's own motion to be resentenced, without waiting for it to be made by the BOP.

In this case, Mr. Minor has requested relief from Butner CI, but the undersigned has been informed this request has been, or will be, denied. As will be further set forth below, this Court can excuse Mr. Minor's failure to further exhaust his administrative remedy and rule on this motion at this time. Waiting any longer for BOP to address this issue would cause irreparable harm to Mr. Minor given his frail health and the urgency of the rapid spread of COVID-19.

**B.  This Court should excuse Mr. Minor's failure to exhaust his administrative remedies.**

Although 18 U.S.C. § 3582(c)(1)(A)(i) allows a Court to consider a request initiated by a defendant, it states such a motion could be made "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." Accordingly, in order to be entitled to relief, Mr. Minor must meet both the

exhaustion requirement and demonstrate extraordinary and compelling reasons warrant a reduction in his sentence.

"Even where exhaustion is seemingly mandated by statute . . . , the requirement is not absolute." *Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019). The requirement of completing the administrative process may be waived if one of the recognized exceptions to exhaustion applies. *United States v. Morris E. Zukerman*, No. 16-CR-194-Torres, DE 116:4 (S.D.N.Y. Apr. 3, 2020) (*citing United States v. Perez*, No. 17-CR-513-3, 2020 WL 1546422, at *2 (S.D.N.Y. Apr. 1, 2020), *United States v. Colvin*, No. 19-CR-179, 2020 WL 1613943, at *2 (D. Conn. Apr. 2, 2020); *United States v. Powell*, 94-CR-316, DE 98 (D.D.C. Mar. 28, 2020). There are three circumstance where failure to exhaust may be excused. "First, exhaustion may be unnecessary where it would be futile, either because agency decisionmakers are biased or because the agency has already determined the issue." *Washington v. Barr*, 925 F.3d at 118. Second, "exhaustion may be unnecessary where the administrative process would be incapable of granting adequate relief." *Id*. at 119. Third, "exhaustion may be unnecessary where pursuing agency review would subject plaintiffs to undue prejudice." *Id*.

Here, undue delay could have catastrophic health consequences, and relief after the administrative process has been completed would be inadequate, if Mr. Minor were to contract the virus before obtaining administrative relief. Requiring Mr. Minor to exhaust administrative remedies, given his unique circumstances and the

exigency of a rapidly advancing pandemic, would result in undue prejudice and render exhaustion of the full BOP administrative process both futile and inadequate.

This Court would not be alone in excusing the exhaustion requirement due to the threat of the coronavirus pandemic. Several District Courts have already granted compassionate release to individuals despite their failure to exhaust the BOP process. *See, e.g., United States v. Zukerman*, 16-CR-194-Torres, DE 116:4-8 (S.D.N.Y. Apr. 3, 2020) (granting defendant's compassionate release motion over government's objections both on the merits and based on defendant's failure to exhaust BOP process), *United States v. Colvin*, 19-CR-179, 2020 WL 1613943, *2 (D. Conn. Apr. 2, 2020) (same), *United States v. Perez*, 17-CR-513-3, 2020 WL 1546422, *2 (S.D.N.Y. Apr. 1, 2020) (same), *United States v. Powell*, 94-CR-316-ESH, DE 98 (D.D.C. Mar. 28, 2020) (excusing defendant from exhausting BOP's administrative process and granting defendant's unopposed motion for compassionate release).

### C. The COVID-19 outbreak presents an extraordinary and compelling circumstance that warrants compassionate release for Mr. Minor, who is a high-risk patient.

On March 11, 2020, the World Health Organization ("WHO") officially classified the new strain of coronavirus, COVID-19, as a pandemic.[3] As of April 7, 2020, COVID-19 has infected more than 1.3 million people worldwide, leading to more than 77,000 deaths.[4] As of April 7, 2020, the United States has become the epicenter

---

[3] "WHO Characterizes COVID-19 as a Pandemic," World Health Organization (March 11, 2020), available at https://bit.ly/2W8dwpS.

[4] "Coronavirus Map: Tracking the Global Outbreak," New York Times (April 7, 2020), available at https://www.nytimes.com/interactive/2020/world/coronavirus-maps.html.

of the new strain of coronavirus, which causes COVID-19, now with more recorded cases than any other country.[5] In the United States, more than 380,000 have been infected, leading to nearly 12,000 deaths.[6] These numbers almost certainly underrepresent the true scope of the crisis, as test kits in the United States have been inadequate to meet demand.

As of April 9, 2020, Butner Low CI reported 14 confirmed inmate cases making it one of the 7 worst impacted BOP facilities in the country. BOP, COVID-19 Coronavirus, available at https://www.bop.gov/coronavirus/. As of April 9, 2020, FCI Butner Medium I, another facility in the Butner Federal Correctional Complex, has the highest number of confirmed inmate cases. *Id*.

Conditions of confinement create the ideal environment for the transmission of contagious disease, meaning that the numbers above are likely to continue to escalate exponentially.[7] Inmates cycle in and out of detention facilities from all over the world and the country, and people who work in the facilities including correctional officers, and care and service providers leave and return daily, without screening. As one doctor stated:

> Congregate settings such as jails and prisons allow for rapid spread of infectious diseases that are transmitted person to person, especially those passed by droplets through coughing and sneezing. When people must share dining halls, bathrooms, showers, and other common areas, the opportunities for transmission are greater. When infectious diseases are transmitted from

---

[5] *Coronavirus Map: Tracking the Spread of the Outbreak*, The New York Times (April 7, 2020), available at https://www.nytimes.com/interactive/2020/world/coronavirus-maps.html#countries.

[6] *Id*.

[7] Joseph A. Bick (2007). Infection Control in Jails and Prisons. *Clinical Infectious Diseases* 45(8):1047-1055, *at* https://doi.org/10.1086/521910.

> person to person by droplets, the best initial strategy is to practice social distancing. When jailed or imprisoned, people have much less of an opportunity to protect themselves by social distancing than they would in the community. Spaces within jails and prisons are often also poorly ventilated, which promotes highly efficient spread of diseases through droplets. Placing someone in such a setting therefore dramatically reduces their ability to protect themselves from being exposed to and acquiring infectious diseases.

Declaration of Dr. Jaimie Meyer, ¶ 9 (Exhibit 1). According to public health experts, detained individuals "are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe;" "infection control is challenging in these settings."[8] Notably, medical professionals within the correctional setting have sounded alarms that prisons and jails—and especially their most vulnerable inmate—are heading for catastrophic consequences.[9]

Indeed, aware of these special risks, on March 26, 2020, Attorney General Barr directed federal prison authorities to begin transferring more elderly and medically compromised inmates to home confinement to avoid a larger outbreak of the coronavirus inside the agency's 122 institutions. *See* Exhibit 2. At the corresponding press conference, Attorney General Barr acknowledged that there were rising concerns for the plight of the 170,000 federal prisoners and the 36,000 staffers who are in regular and close contact with the inmates every day. *See* Johnson, Kevin, Feds

---

[8] "Achieving A Fair And Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States," (March 2, 2020), *at* https://bit.ly/2W9V6oS.

[9] *See* Jennifer Gonnerman, *A Rikers Island Doctor Speaks Out to Save Her Elderly Patients from the Coronavirus*, The New Yorker (March 20, 2020), available at https://www.newyorker.com/news/news-desk/a-rikers-island-doctor-speaks-out-to-save-her-elderly-patients-from-the-coronavirus.

to expand home confinement for elderly inmates to avoid larger coronavirus outbreak, USA Today, March 26, 2020, available at https://www.usatoday.com/story/news/politics/2020/03/26/feds-expand-home-confinement-elderly-inmates/2916853001/. He stated that "there are some at-risk inmates who are non-violent and pose minimal likelihood of recidivism and who might be safer serving their sentences in home confinement rather than in BOP facilities."[10] *Id.*

Other officials and courts are beginning to speak out about the need to release inmates.[11] Multiple Members of Congress have written to the President, the Attorney

---

[10] Eligibility for placement in community corrections settings, including home confinement, for the remainder of one's sentence is normally governed by 18 U.S.C. § 3624(c), which provides that defendants can serve the lesser of six months or ten percent of their sentence on home confinement. Notably, however, Section 12003(b)(2) of the Coronavirus Aid, Relief, and Economic Security Act, also known as the CARES Act, permits the BOP Director to lengthen the time of permitted home confinement under these extraordinary circumstances.

[11] The following are just some examples.

The Chief Justice of the Supreme Court of Montana has called on his fellow judges "to review [their] jail rosters and release, without bond, as many prisoners as [they] are able." Chief Justice McGrather Letter (March 20, 2020), available at https://courts.mt.gov/Portals/189/virus/Ltr%20to%20COLJ%20Judges%20re%20COVID-19%20032020.pdf?ver=2020-03-20-115517-333.

The New York Board of Corrections have called on officials to release vulnerable inmates in an effort not only to spare them, but also to reduce the spread. Michael Rezendes and Robin McDowell, *38 positive for coronavirus at Rikers, NYC jails*, (March 22, 2020), available at https://apnews.com/54dbc9d47f62cf0c0240314310cfe909 ("Fewer people in the jail will save lives and minimize transmission to people in custody as well as staff."). Brooklyn District Attorney Eric Gonzalez, joined by public health experts, has asked Governor Cuomo to grant emergency clemencies to elderly and sick prisoners, and Mayor De Blasio has announced efforts to release inmates held at Rikers Island jail on minor charges or with certain health problems. Sarah Lustbader, *Coronavirus: Sentenced to COVID-19*, The Daily Appeal (Mar. 12, 2020) available at https://theappeal.org/sentenced-to-covid-19/; *City seeks to free inmates held on 'minor' charges or with certain health problems*, New York Times (March 19, 2020), available at https://nyti.ms/2WDSekz.

Cuyahoga County, Ohio is holding mass pleas and bail hearings to reduce the current jail population. Cory Shaffer, *Cuyahoga County officials will hold mass plea, bond hearings to reduce jail population over coronavirus concerns*, Cleveland.com, available at

General, and the Director of the Bureau of Prisons about the crisis and urging the release of vulnerable inmates.[12] As recently as March 19, 2020, Members of Congress have called for the release of prisoners who are most vulnerable to this disease—*including the expanded use of compassionate release.*[13]

Similar to Barr's recommendation, state courts and legislatures are ordering inmates released. The Chief Justice of the Supreme Court of New Jersey issued an order last week releasing 1,000 inmates currently serving county jail sentences, in an effort to slow the virus.[14] The Miami-Dade County State Attorney, too, has begun

---

https://www.cleveland.com/court-justice/2020/03/cuyahoga-county-officials-will-hold-mass-plea-hearings-to-reduce-jail-population-over-coronavirus-concerns.html. Mahoning County (Ohio) jail is refusing all non-violent misdemeanor arrestees. Local county jails making changes due to coronavirus outbreak, WKBN (March 12, 2020), available at https://www.wkbn.com/news/coronavirus/mahoning-county-jail-refusing-some-inmates-due-to-coronavirus-outbreak/.

The Collin County, Texas, Sheriff is seeking to avoid arrests for certain non-violent offense. Charles Scudder, *Facing coronavirus concerns, Collin County sheriff asks police not to bring petty criminals to jail*, The Dallas Morning News (March 12, 2020), available at https://www.dallasnews.com/news/public-health/2020/03/12/facing-coronavirus-concerns-collin-county-sheriff-asks-police-not-to-bring-petty-criminals-to-jail/.

*See also L.A. County Releasing Some Inmates from Jail to Combat Coronavirus*, L.A. Times, Mar. 16, 2020, available at: http://www.latimes.com/california/story/2020-03-16/la-jail-population-arrests-down-amidcoronavirus.

[12] *See, e.g.*, U.S. Senator Warren Letter to BOP Director Carvajal (March 18, 2020) available at: https://www.fd.org/sites/
default/files/covid19/2020-03-09_senator_warren_letter_to_bop_re_coronavirus.pdf.

[13] *See* U.S. House of Representatives Committee on the Judiciary Chairman Nadler Letter to Attorney General Barr (March 19, 2020) at 2, available at
https://judiciary.house.gov/uploadedfiles/2020-03-19_letter_to_ag_barr_re_covid19.pdf; Rep. Pressley and Sen. Warren Letter (March 19, 2020), available at
https://pressley.house.gov/sites/pressley.house.gov/files/PRESSLEY%20WARREN_Letter%20to%20Trump_COVID%20Incarcerated%20Persons%20SIGNED.docx.pdf?fbclid=IwAR1zjcxa2cc_vQSiq0CGXV_o6LCAZjfT4Nnz01zXW4xTD6a8nInKwZqUk7Y.

[14] Tracey Tully, *1,000 Inmates Will Be Released From N.J. Jails to Curb Coronavirus Risk* (Mar. 23, 2020),
https://www.nytimes.com/2020/03/23/nyregion/coronavirus-nj-inmates-release.html

"formulating a plan to release misdemeanor and nonviolent inmates from the county jail system during the COVID-19 outbreak."[15] The Governor of California announced on March 31, 2020, that the state would be expediting parole for 3,500 non-violent offenders.[16]

Courts is this district and around the country are recognizing that COVID-19 presents an extraordinary and compelling reason to release defendants from prisons and jails, whether on compassionate release or bond. *See e.g.*, *United States v. Maria Marin*, 15-CR-252 (E.D.N.Y. Mar. 30, 2020) (docket entry granting motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) "for the reasons stated in his motion, including his advanced age, significantly deteriorating health, elevated risk of dire health consequences due to the current COVID-19 outbreak, status as a non-violent offender, and service of 80% of his original sentence."); *United States v. Copeland*, No. 2:05-CR-135-DCN (D.S.C. Mar. 24, 2020) (granting compassionate release to defendant in part due to "Congress's desire for courts to release individuals the age defendant is, with the ailments that defendant has during this current pandemic."); *United States v. Powell*, No. 1:94-CR-316-ESH (Mar. 28, 2020) (granting motion for compassionate release in light of COVID-19 and finding it "would be futile" to require defendant to first exhaust in light of open misdemeanor case); *United*

---

[15] Jerry Iannelli, *After Criticism, Miami-Dade State Attorney Pledges to Help Release Nonviolent Arrestees*, Miami New Times (Mar. 16, 2020) https://www.miaminewtimes.com/news/miami-dade-jails-state-attorney-rundle-outlines-coronavirus-plan-11598148.

[16] Paige St. John, California to release 3,500 inmates early as coronavirus spreads inside prisons, LA Times, March 31, 2020, available at https://www.latimes.com/california/story/2020-03-31/coronavirus-california-release-3500-inmates-prisons

*States v. Grobman*, No. 18-CR-20989-Altman, DE 397 (S.D. Fla. Mar. 29, 2020) (releasing defendant convicted after trial of fraud scheme in light of "extraordinary situation of a medically-compromised detainee being housed at a detention center where it is difficult, if not impossible, for [the defendant] and others to practice the social distancing measures which government, public health and medical officials all advocate"); *Xochihua-James v. Barr*, No. 18-71460 (9th Cir. Mar. 23, 2020) (unpublished) (*sua sponte* releasing detainee from immigration detention "[I]n light of the rapidly escalating public health crisis"); *United States v. Kennedy*, No. 5:18-cr-20315, DE 77 (E.D.Mich. Mar. 27, 2020) (post-plea presentence release of defendant whose pretrial release was revoked because "the COVID-19 pandemic constitutes an independent compelling reason" for temporary release and "is *necessary* for Defendant to prepare his pre-sentence defense"); *In re Request to Commute or Suspend County Jail Sentences*, Docket No. 084230 (N.J. Mar. 22, 2020) (releasing large class of defendants serving time in county jail "in light of the Public Health Emergency" caused by COVID-19); *United States v. Mclean,* No. 19-cr-380, DE 21 (D.D.C. Mar. 28, 2020) ("As counsel for the Defendant candidly concedes, the facts and evidence that the Court previously weighed in concluding that Defendant posed a danger to the community have not changed – with one exception. That one exception—COVID-19—however, not only rebuts the statutory presumption of dangerousness, *see* 18 U.S.C. § 3142(e), but tilts the balance in favor of release."); *United States v. Harris*, No. 19-cr-356 DE 36 (D.D.C. Mar. 26, 2020) ("The Court is convinced that incarcerating Defendant while the current COVID-19 crisis continues

to expand poses a far greater risk to community safety than the risk posed by Defendant's release to home confinement on . . . strict conditions."); *United States v. Stephens*, 2020 WL 1295155, __F. Supp. 3d__ (S.D.N.Y. Mar. 19, 2020) (releasing defendant in light of "the unprecedented and extraordinarily dangerous nature of the COVID-19 pandemic"); *Basank v. Decker*, No. 20-cv-2518, (S.D.N.Y. Mar. 26, 2020) ("*[t]he nature* of detention facilities makes exposure and spread of the [coronavirus] particularly harmful" so granting TRO and releasing high-risk plaintiffs); *Coronel v. Decker*, 20-cv-2472-AJN, DE 26 (Mar. 27, 2020) (granting TRO and releasing from immigration detention facility in light of COVID-19).

As discussed above, the CDC has stated that those who are at high-risk for severe illness from COVID-19 include people aged 65 years or older, people who have serious heart conditions, and people with certain underlying medical conditions, including diabetes. "Most people in the higher risk categories," who contract COVID-19 "will require more advanced support: positive pressure ventilation, and in extreme cases, extracorporeal mechanical oxygenation. Such care requires highly specialized equipment in limited supply as well as an entire team of care providers, including but not limited to 1:1 or 1:2 nurse to patient ratios, respiratory therapists and intensive care physicians." Declaration of Dr. Jonathan Louis Golob ("Golob Decl.") ¶ 3 (Exhibit 3).[17] "For high risk patients who do not die from COVID-19, a prolonged recovery is expected to be required, including the need for extensive rehabilitation for profound

---

[17] These declarations were prepared in connection with litigation unrelated to the instant case, and were previously filed as exhibits to the defendant's Expedited Motion to Revoke Detention Order, No. 1:19-cr-341-DCN (D. Idaho March 18, 2020).

deconditioning, loss of digits, neurological damage, and loss of respiratory capacity." Golob Decl. ¶ 4.

Given his age and serious medical conditions, Mr. Minor is in the group of highest risk of death or severe illness from COVID-19. Mr. Minor fits in not just one, but multiple of those listed categories: he has a history of serious heart conditions and he has diabetes. If he remains in BOP custody, he is at extremely high risk of contracting COVID-19 because of the inability to practice the necessary distancing and hygiene. And if he contracts COVID-19, he is at extremely high risk of dying. Even if he does not die, he will need the extreme type of care outlined by Dr. Golob: "highly specialized equipment in limited supply as well as an entire team of care providers, including but not limited to 1:1 or 1:2 nurse to patient ratios, respiratory therapists and intensive care physicians." And he would have prolonged recovery, "including the need for extensive rehabilitation for profound deconditioning, loss of digits, neurological damage, and loss of respiratory capacity."

Thus, given the current and rapidly escalating spread of COVID-19, which has the capacity to soon overwhelm both the prison and public health systems, and Mr. Minor's unique vulnerability of developing severe illness or dying as a result of the virus, Mr. Minor respectfully asks this Court to reduce his sentence to time served and allow him to serve the remainder of the prison term on home confinement.

If released, Mr. Minor would live with his wife, Kathleen Minor, at their home address, as reported in the PSR. (See DE 19: p. 3). Ms. Minor would be able to provide

financial support for Mr. Minor and assist him in obtaining any necessary medical care.

The undersigned has conferred with Assistant United States Attorney Adrienne Rabinowitz, and she has advised the government opposes this request.

## CONCLUSION

For the foregoing reasons, Mr. Minor respectfully requests that the Court reduce Mr. Minor's sentence and allow him to serve the remainder of his prison time on home confinement.

Respectfully submitted,

**MICHAEL CARUSO**
**FEDERAL PUBLIC DEFENDER**

By:   */s/M. Caroline McCrae*
Assistant Federal Public Defender
Florida Bar No.: 72164
450 S. Australian Ave, Suite 500
West Palm Beach, FL 33401
Tel: 561-833-6288
caroline_mccrae@fd.org

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 10, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

        */s/ M. Caroline McCrae*
        M. Caroline McCrae